UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRIANNA J.,

                    Plaintiff,

     v.                                    5:24-CV-1016
                                         (DJS)

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.
_____

**APPEARANCES:**                           **OF COUNSEL:**

SCHNEIDER & PALCSIK          MARK A. SCHNEIDER, ESQ.
Attorney for Plaintiff
57 Court St.
Plattsburgh, New York 12901

SOCIAL SECURITY ADMINISTRATION    SHANNON FISHEL, ESQ.
OFFICE OF GENERAL COUNSEL
Attorney for Defendant
6401 Security Boulevard
Baltimore, Maryland 21235

**DANIEL J. STEWART**
**United States Magistrate Judge**

## MEMORANDUM DECISION AND ORDER[1]

      Plaintiff, Brianna J., brought this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security that Plaintiff was not disabled.

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Dkt. No. 5 & General Order 18.

Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt Nos. 14, 19. Plaintiff filed a reply. Dkt. No. 20. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleading is denied and Defendant's Motion is granted.

## I. BACKGROUND

### A. Factual Background

Plaintiff was born in 2001. Dkt. Nos. 8, 9, Admin. Tr. ("Tr."), p. 204. She had several temporary jobs but no past relevant work. Tr. at pp. 214-17, 740. Plaintiff received Supplemental Security Income benefits based on a disability as a child. Tr. at p. 715 (citing Tr. at pp. 67-68). "As required by law, eligibility for these disability benefits was redetermined under the rules for determining disability in adults when [Plaintiff] attained the age 18, and on September 26, 2019, [the Social Security Administration] determined [Plaintiff was no longer disabled as of the same date." Tr. at p. 715; *see also* Tr. at p. 90. This determination was upheld upon reconsideration after a disability hearing by a state agency Disability Hearing Officer, and by the decision of an Administrative Law Judge ("ALJ") dated August 9, 2024. Tr. at pp. 715, 724. The Appeals Council denied Plaintiff's request for review on May 22, 2023, and Plaintiff thereafter commenced a proceeding in this Court. Tr. at pp. 1-5, 799-818. The Commissioner stipulated to an Order dated November 8, 2023, reversing the final decision of the Commissioner, and directing the case be remanded for further administrative proceedings. Tr. at p. 793-94.

On December 20, 2023, the Appeals Council remanded the claims to an ALJ for further proceedings. Tr. at pp. 821-25. ALJ Raymond Rogers held a hearing on June 11,

2024, where vocational expert ("VE") Robert Beadles, Plaintiff, and Plaintiff's mother Brenda Bear testified.  Tr. at pp. 753-89.  In a decision dated August 9, 2024, the ALJ denied Plaintiff's continuing eligibility for benefits by determining her disability ended on September 26, 2019.  Tr. at p. 742.

## B. The ALJ's Decision

In his most recent decision, the ALJ made the following findings of fact and conclusions of law.  First, the ALJ found Plaintiff was notified that she was found no longer disabled as of September 26, 2019, based on a redetermination of disability under the rules for adults who file new applications.  Tr. at p. 718.  Second, the ALJ found since September 26, 2019, Plaintiff has the following severe impairments: seizure disorder, headaches, asthma, obesity, bipolar disorder, autism disorder, attention deficit hyperactivity disorder ("ADHD"), borderline intellectual disorder, anxiety, and depression.  *Id.*  Third, the ALJ found Plaintiff does not have an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926) ("Listings").[2]  Tr. at p. 721.  Fourth, the ALJ found Plaintiff has the residual functional capacity ("RFC") to

> lift/carry 20 pounds occasionally 10 pounds frequently; sit for six hours in an eight hour workday; stand and/or walk for six hours in an eight hour workday; occasional climbing of ramps or stairs; no climbing of ladders, ropes, or scaffolds; frequent balancing as defined by the SCO; occasional stooping, kneeling, and crouching; no crawling; no commercial driving; work environments of moderate noise as defined by SCO noise code 3; must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, and gases, no exposure to

---

[2] The ALJ considered Listings 3.02, 3.03, 11.00, 11.02, 12.04, 12.06, 12.10, 12.11.  Tr. at p. 721.

> hazardous machinery or unprotected heights; able to understand, remember, and carry out simple instructions; able to use judgment to make simple work-related decisions; able to deal with changes in a routine work setting; no work requiring a specific production rate such as assembly line work or work that requires hourly quotas; no tandem work; occasional interaction with coworkers and supervisors; and no interaction with the public.

Tr. at p. 725. Fifth, the ALJ found Plaintiff had no past relevant work. Tr. at p. 740. Sixth, the ALJ found considering Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that she can perform. Tr. at p. 741. The ALJ therefore concluded Plaintiff's disability ended on September 26, 2019, and she had not become disabled again since that date. Tr. at p. 742.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F. 2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F. 2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F. 2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F. 2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F. 2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F. 2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F. 2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step determination whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987). The five-step process asks:

(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F. 3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Plaintiff's impairments did not meet or medically equal a Listing

Plaintiff argues the ALJ erred in his step three determination that Plaintiff's cognitive impairment did not meet Listing 12.05 when finding she only suffered from borderline intellectual functioning.  Dkt No. 14, Pl.'s Mem of Law at pp. 26-30. Additionally, Plaintiff argues the ALJ also erred by not finding she was disabled under Listings 12.04 (depression and bipolar), 12.06 (anxiety), 12.10 (autism spectrum disorder) due to meeting extreme and marked limitations within the Paragraph B requirements. *Id.* at pp. 28-29.

George Grubbs Psy. D.'s September 2019 report for redetermination indicated that Plaintiff had moderate limitations in two categories and mild limitations in two categories. Tr. at p. 61.  Michelle M. Cordero-Soto, Ph. D.'s consultative examination report indicated

Plaintiff was limited in social functioning and functional ability.[3] Tr. at p. 637. Tangela Culpepper, Ph.D.'s December 2019 psychiatric review technique indicated Plaintiff had moderate limitations in three categories and mild limitations in one category. Tr. at p. 678. The ALJ determined Plaintiff's paragraph B limitations based on medical findings in the treatment record and Plaintiff's testimony. Tr. at pp. 722-23.

The third step of the five-step test employed by the ALJ requires a determination of whether the Plaintiff has an impairment listed in Appendix 1 of the Social Security Regulations. 20 C.F.R. § 404, Subpt. P, App. 1. "These are impairments acknowledged by the [Commissioner] to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the 'listed' impairments, he or she is conclusively presumed to be disabled and entitled to benefits." *Glover v. Berryhill*, 2018 WL 739371, at *20 (S.D.N.Y. Feb. 7, 2018) (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir. 1995)).

"Plaintiff has the burden of proof at step three to show that her impairments meet or medically equal a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009). "To meet a Listing, Plaintiff must show that her medically determinable impairment satisfies all of the specified criteria in a Listing." *Id.* "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "Additionally, a court may uphold an ALJ's finding that a claimant does not meet a Listing even where the

---

[3] Dr. Cordero-Soto does not define her term limited and continued to report Plaintiff as moderately to severely impaired, which is also not defined in scale of paragraph B requirements. Tr. at p. 637.

decision lacks an express rationale for that finding if the determination is supported by substantial evidence." *Andrea K. v. Comm'r of Soc. Sec.*, 2021 WL 1224049, at *6 (N.D.N.Y. Mar. 31, 2021). To meet the criteria of these Listings, Plaintiff must satisfy the criteria in both paragraphs "A" and "B," or paragraphs "A" and "C." 20 C.F.R. §§ 404 Subpart P, Appendix 1, 12.04, 12.05, 12.06, 12.10. Paragraph "B" requires:

> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental function:
> 1. Understand, remember, or apply information.
> 2. Interact with others.
> 3. Concentrate, persist, or maintain pace.
> 4. Adapt or manage oneself.

20 C.F.R. §§ 404 Subpart P, Appendix 1, 12.04B, 12.05B, 12.06B, 12.10B. For the following reasons, the Court agrees with the Commissioner that the ALJ properly determined Plaintiff's limitations and supported that determination with substantial evidence in the record from multiple medical findings. *See* Dkt. No. 19, Def.'s Mem. of Law at p. 28.

The ALJ found Plaintiff has no more than moderate limitations in understanding, remembering, or applying information. Tr. at p. 722. In support of this determination, the ALJ noted Plaintiff was able to live independently with her husband. *Id*. She was studying for her GED. *Id*. Plaintiff's "recent and remote memory were described as poor or fair, at times. However, she was also found to have memory that was within normal limits." *Id*. Her attention was mildly impaired, intact, adequate, or good. *Id*. Plaintiff thought content was appropriate, relevant, logical, and there were no observed disruptions of thought processes. *Id*. Additionally, Dr. Loret de Mola-Roy indicated that her intelligence falls in

the borderline range.  Tr. at p. 472.  During the hearing ALJ noted "she is very sharp when it comes to medical terminology."  Tr. at p. 777.

Next, the ALJ determined Plaintiff has moderate limitations in interacting with others.  Tr. at p. 722.  Despite her reported difficulties in this area, the ALJ noted Plaintiff wishes to start a family, was a hostess at a restaurant, reported her own socialization, and the record lacked evidence that she had difficulties interacting with her providers.  *See* Tr. at pp. 335, 338, 424, 429, 437, 722-23,1220.  In Shannon Woodward's October 2019 teacher questionnaire, she indicated Plaintiff had no problems interacting and relating with others.  Tr. at p. 250.

Next, the ALJ determined Plaintiff has moderate limitations in concentrating, persisting or maintaining pace.  Tr. at p. 723.  In support of this, the ALJ cited mental health treatment records and mental status evaluations of record describing her as alert and oriented.  Tr. at pp. 335-39, 349, 366, 376, 397, 398-402, 404, 415, 416, 424, 429, 430, 437.  Lastly, the ALJ determined she had moderate limitation in the functional areas of adapting or managing oneself.  Tr. at p. 724.  In support of this finding, the ALJ noted Plaintiff reported she wished to start a family with her husband, she cares for pets, attends appointments alone, performs household chores, and simple meals.  *Id*.  Her medications for anxiety and depression have helped her improved mood.  Tr. at p. 1743.

The ALJ's conclusion that there were no extreme or marked limitations was supported by substantial evidence and thus there was no error at step three.

### B. Substantial Evidence Supports the ALJ's Determination

A claimant's RFC is the most she can do despite his or her limitations.  20 C.F.R. §

404.1545(a)(1).  "Ordinarily, RFC is the individual's maximum remaining ability to do

sustained work activities in an ordinary work setting on a regular and continuing basis.  A

regular and continuing basis means eight hours a day, for five days a week, or an equivalent

work schedule."  *Elizabeth B. v. Comm'r of Soc. Sec.*, 2022 WL 17721254, at *7,

(N.D.N.Y. December 15, 2022) (*quoting Pardee v. Astrue*, 637 F. Supp. 2d 200, 210

(N.D.N. Y. 2009)).  "In making a residual functional capacity determination, the ALJ must

consider a claimant's physical abilities, mental abilities, symptomology, including pain and

other limitations which could interfere with work activities on a regular and continuing

basis.  *Id*. (citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related

limitations created by an individual's response to demands of work . . . must be reflected

in the RFC assessment.'"  *Hendrickson v. Astrue*, 2012 WL 7784156, at *3 (N.D.N.Y. Dec.

11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8).  The RFC determination "must be

set forth with sufficient specificity to enable [the Court] to decide whether the

determination is supported by substantial evidence."  *Ferraris v. Heckler*, 728 F. 2d 582,

587 (2d Cir. 1984).

Plaintiff stated "[t]he ALJ did include a 'seizure disorder' as severe as [sic] Step 2.

He did not consider it to be 'epilepsy[;]'" also the ALJ included 'headaches' as severe at

Step 2.  However, he failed to characterize them as 'migraine headaches.'"  Pl.'s Mem. of

Law at p. 23.  Although the ALJ did not find epilepsy and migraine headaches as severe

impairments at step two, the finding of a seizure disorder and headaches as severe allowed

him to consider them throughout the remainder of the assessment. Tr. at p. 725. This is a case where any limitations arising from Plaintiff's epilepsy and migraine headaches were clearly subsumed within another documented and identified severe impairment. *Cruz v. Colvin*, 2017 WL 1190488, at *3 (W.D.N.Y. Mar. 31, 2017) ("[B]ecause the limitations arising from Plaintiff's TMJ-induced headaches were properly incorporated into the RFC, there was no error in not specifically naming TMJ as a severe impairment at Step Two."); *see also Paz v. Comm'r of Soc. Sec.*, 2016 WL 1306534, at *13 (E.D.N.Y. Mar. 31, 2016) (remand not warranted despite ALJ's failure to recognize a particular limitation as a severe impairment because the ALJ did identify severe impairments at step two, so Plaintiff's claim proceeded through the sequential evaluation and ALJ considered the combination of impairments and all symptoms in making the RFC determination); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013).

"[T]he failure to find a specific impairment severe at step two is harmless where the ALJ concludes (a) there is at least one other severe impairment, (b) the ALJ continues with the sequential evaluation, and (c) the ALJ provides explanation showing []he adequately considered the evidence related to the impairment that is ultimately found non-severe." *Stacy G. v. Berryhill*, 2018 WL 6250790, at *5 (N.D.N.Y. Nov. 29, 2018) (collecting cases); *see also Snyder v. Colvin*, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014) (explaining "when [the] functional effects of impairments erroneously determined to be non-severe at step two are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently conclude that the same result would have been reached absent the error."). Stated differently, "[w]here

an ALJ excludes certain impairments from the list of severe impairments at step two of the sequential analysis, any such error is harmless if the ALJ identifies some severe impairments so that the analysis proceeds and the ALJ considers the effects of the omitted, non-severe impairments during the subsequent steps following step two." *Bedasie v. Comm'r of Soc. Sec.*, 2022 WL 4326122, at *10 (E.D.N.Y. Sept. 17, 2022) (collecting cases).

Plaintiff makes largely conclusory arguments regarding the impact including epilepsy and headaches to her severe impairments would have on the RFC. Plaintiff provides no support for these arguments, alleging no specific limitations which should have been included in the RFC as a result , and it is Plaintiff's "burden to prove a more restrictive RFC." *Snyder v. Comm'r of Soc. Sec.*, 2023 WL 1943108, at *3 (2d Cir. Feb 13, 2023). While Plaintiff was diagnosed with epilepsy, "the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Jalessa H. v. Comm'r of Soc. Sec.*, 580 F. Supp 3d 1, 4 (2d Cir. 2022) (citing *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (2d Cir. 2012) (quoting *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995))). Plaintiff testified she has not had a seizure since she was five years old. Tr. at p. 781. She has a valid driver's license and is able to drive. *Id*. The ALJ acknowledged Plaintiff's neurologist not her headaches as non intractable and provided noise and environmental limitations in the RFC to account for Plaintiff's headaches. Tr. at p. 735.

Therefore, the ALJ's RFC determination was supported by substantial evidence.

### C. Evaluating Medical Evidence

For DIB and SSI claims filed on or after March 27, 2017, an ALJ's review of medical opinion evidence and prior administrative medical findings is governed by 20 C.F.R. § 416.920c.  Under this regulation, applicable here, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. § 416.920; *see also Schillo v. Kijakazi*, 31 F. 4th 64, 71 n.1; *Howard D. v. Saul*, 2021 WL 1152834, at *11 (N.D.N.Y. Mar. 26, 2021).  Rather, the ALJ must use five factors to determine the persuasiveness of the medical opinion evidence and prior administrative medical findings: supportability; consistency; relationship with the claimant; specialization; and other factors, such as "a medical source's familiarity with the other evidence in a claim."  20 C.F.R. §§ 416.920(c)(a)-(c); *see also Howard*, 2021 WL 1152834, at *11.

The two most important factors in this analysis are supportability and consistency. 20 C.F.R. § 416.920(c)(b)(2); *Loucks v. Kijakazi*, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022).  The ALJ is specifically required to "explain how [h]e considered the supportability and consistency factors" when determining the persuasiveness of "a medical source's medical opinions or prior administrative medical findings."  *Sarah B. W. v. Kijakazi*, 2022 WL 16734988, at *6 (N.D.N.Y Nov. 7, 2022); *see also Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. March 2022) ("It is not sufficient to cite to some objective medical evidence in the record and simply conclude that an opinion is consistent with other evidence in the file rendering it persuasive.").  "If the ALJ fails adequately to

explain the supportability or consistency factors, or bases [his] explanation upon a misreading of the record, remand is required." *Rivera v. Comm'r of Soc. Sec.*, 2020 WL 8167136, at \*14 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021).

Under the supportability factor, the more a medical opinion or prior administrative medical finding is reinforced by "relevant . . . objective medical evidence and supporting explanation," the "more persuasive" it will be. 20 C.F.R. § 416.920c(c)(1); *see also Carmen M. v. Comm'r of Soc. Sec.*, 2021 WL 5410550, at \*4 (W.D.N.Y. Nov. 19, 2021) ("The supportability factor asks how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations."). Under the consistency factor, a medical opinion or prior administrative medical finding is "more persuasive" if it is consistent "with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 416.920c(c)(2); *see also White v. Comm'r of Soc. Sec.*, 2022 WL 951049, at \*5 (S.D.N.Y. Mar. 30, 2022) ("Consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record."); *see generally* 20 C.F.R. § 416.920b(b) ("We consider evidence to be inconsistent when it conflicts with other evidence, contains an internal conflict, is ambiguous, or when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques.").

"An ALJ must consider, but is not required to discuss, the three remaining factors when determining the persuasiveness of a medical source's opinion." *Howard D. v. Saul*, 2021 WL 1152834, at \*11; *see also* 20 C.F.R. §§ 416.920c(a), (b)(2). However, where the

ALJ has found two or more divergent medical opinions to be equally well supported and consistent with the record, the ALJ must articulate how he or she evaluated the three remaining factors. 20 C.F.R. § 416.920c(b)(3); *see also Acheampong v. Comm'r of Soc. Sec.*, 564 F. Supp. 3d 261, 267 (E.D.N.Y. 2021).

Plaintiff alleges "the ALJ failed to correctly evaluate the opinion of her treating psychiatrist Dr. Sanz. She noted [Plaintiff]'s marked limitations in concentration, persistence, and focus; in interaction with others; in understandings and carrying out instructions; and in adaptation." Pl.'s Mem. of Law at p. 34. She also claims the ALJ did not give enough weight to the opinions of her teacher Shannon Woodward. *Id.* . . ." Dkt. No. 14, Pl.'s Mem. of Law at 34.

Plaintiff's argument regarding Dr. Sanz is one sentence with no citation. *See* Dkt. No. 14 Pl.'s Mem. of Law at 34. To the extent she is referencing Dr. Sanz' notes about Plaintiff's "deficits, patterns, and issues" toward the beginning of every treatment record in the "History of Present Illness" section (Tr. at pp. 645-46, 650, 654, 661-62, 1175-76, 1183-84, 1215-16, 1224-25), such statements do not qualify as medical opinions. *See* 20 C.F.R. § 416.913(a)(2) (recognizing that medical opinions must reflect "a statement from a medical source"). These statements are bracketed by Plaintiff's reports and appear to reflect her own beliefs about her functional abilities, while Dr. Sanz's examination findings and conclusions about Plaintiff's functioning are addressed in separate sections. Tr. at pp. 647-48, 652-53, 663-64, 1177-78, 1185-86, 1217-18, 1226-27.

Plaintiff's teacher Ms. Woodward is not a medical source but is an "other source" and consideration of her opinion does not require the same level of articulation. *See* 20

C.F.R. § 416.920c(d) (providing that the ALJ is not required to articulate how he considered evidence from nonmedical sources using the requirements for medical sources). Regardless, the ALJ found her opinion partially persuasive, noting the opinion addressed the childhood domains of functions, and supports a finding that Plaintiff had greater social limitations than what was assessed.  Tr. at p. 740.  However, the treatment records and mental status evaluations also support a finding that Plaintiff has work-related functional limitations associated with understanding, remembering, or applying information, as well as with concentrating, persisting, or maintaining pace.  *Id*. Plaintiff offers no argument as to why this opinion was due more deference beyond her general assertion that the ALJ did not give it enough "weight.  Dkt. No. 14, Pl's Mem. of Law at 32.  Therefore, the ALJ's decision is supported by substantial evidence.

As the Commissioner contends, and this Court agrees, the statements from Dr. Sanz and Ms. Woodward were not medical opinions under the governing regulations, and the ALJ was not required to assess their persuasiveness.  Dkt. No. 19, Def.'s Mem of Law at p. 30 n.14.

As the Commissioner states and this Court agrees "Plaintiff makes an undeveloped argument about the 2016 [consultative psychological] evaluation by [Dr.] Loret de Mola-Roy (*see* Pl. Br. at 32), that evaluation occurred three years before Plaintiff turned 18, when she was tested pursuant to [] child[] [disability] standards (Tr. 473)."  Def.'s Mem. of Law at p. 31 n.15.

Finally, Plaintiff objects to the consideration of the consultative examination of Dr. Codero-Soto.  On September 24, 2019, Dr. Cordero-Soto conducted a consultative

examination of Plaintiff.  Tr. at pp. 634-37.  Prior to the examination, Plaintiff reported recalling requiring both speech and occupational therapy.  Tr. at p. 634.  She was in the 11th grade on an Individualized Education Plan, obtaining mostly A, Bs and Cs.  *Id*.  She was not currently employed but at her previous job as a server, asked not to have her "disability" disclosed.  *Id*.  She denied a history of psychiatric hospital admission, suicide attempts, suicidal or homicidal ideations, visual and auditory hallucination, drug or alcohol abuse, legal problem, and symptoms related to emotional disturbances.  Tr. at p. 637.  She indicated experiencing ADHD symptoms, such as, easily forgetting things and difficulty concentrating, requiring assistance counting money and with reading and filling out important documents.  *Id*.

During her examination, Dr. Cordero-Soto found Plaintiff should be entitled to benefits because she is not capable of managing her own funds, per her caregiver's report.  Tr. at p. 637.  Dr. Cordero-Soto opined her social functioning seemed limited and moderately to severely impaired based on symptoms related to ADHD and autism spectrum disorder ("ASD"), with intellectual impairment.  *Id*.  Her functional ability seemed limited and moderately to severely impaired, based on symptoms related to ADHD and ASD, with intellectual impairment.  *Id*.   Plaintiff scored a full-scale IQ of 70 placing her within the extremely low to borderline range of intellectual functioning.  Tr. at p. 637.

The ALJ found Dr. Cordeo-Soto's opinion regarding severe limitations not persuasive for several reasons.  Tr. at p. 737.  The ALJ noted from Dr. Cordeo-Soto's examination that Plaintiff was appropriately dressed, groomed and demonstrated good hygiene.  Tr. at p. 636.  She displayed good eye contact, was oriented to person, time, place

and purpose. *Id*. Her mood was neutral, and affect was appropriate and congruent to mood. *Id*. Plaintiff's memory for recent and remote events was poor. *Id*. Plaintiff's attention and concentration were good. *Id*. She was able to spell the word "world" forwards and backwards. *Id*. She could count to 30, by twos, without making any errors, forward and backwards. *Id*. Her speech was normal for rate and tone. *Id*. Dr. Codero-Soto occasionally required Plaintiff to repeat verbalizations in order to understand her. *Id*. However, her expressive and receptive language abilities were average and there was no observed disruption in her thought process. *Id*. There were no symptoms of psychosis such as hallucinations, delusions, or flight of ideas. *Id*. Additionally, while Dr. Cordeo-Soto opined she is not capable of managing her own funds, she testified she is able to use a debit card, and her husband sends her money. Tr. at p. 782. Throughout the record Plaintiff's symptoms were generally stable with unremarkable mental status examination findings. Tr. at pp. 645-48, 650-53, 656-57, 663-64, 1185, 1226, 1269-70, 1716-17, 1726, 1845, 1872.

Here, the ALJ provided a detailed discussion of the record evidence and his conclusions. Tr. at pp. 737-738. "[W]hen the ALJ's conclusions find reasonable support in the record, courts will defer to the ALJ's resolution regarding the appropriate weight to be afforded to various medical opinions." *Edward J. v. Kijakazi*, 2022 WL 4536257, at *4 (N.D.N.Y. Sept. 28, 2022) (internal quotation omitted). The Court, therefore, finds no error in the consideration of this opinion.

### D. Evaluation of Symptoms

Plaintiff argues that the ALJ did not sufficiently consider her and her mothers' subjective claims of Plaintiff's disabling limitations.    Pl.'s Mem. of Law at 36. Specifically, she argues the "ALJ erred finding it inconsistent that Plaintiff did not know basic math (and could not add seven and eight) or know how to spell her name, but did know how to say the words "narcolepsy" and "cataplexy."    Also, he erred in finding her mother's testimony to only be partially persuasive."    *Id*.    Plaintiff misinterprets the ALJ's statement during the hearing that " . . . with respect to you know quizzing her about spelling her name or math equations, I don't think that's helpful.    I could read -- -- you know her psychometric testing and I think one thing, also, that you know just – you know listening to the testimony is narcolepsy and cataplexy, she is very sharp when it comes to medical terminology.    And you know being unable to add seven plus eight or spell her last name, to me that's not consistent.    So, you know -- -- and I don't think it helps.    So if you could just stick to you know the functional testimony . . ."    Tr. at pp. 777-78.    It is safe to infer from the transcript that the ALJ is referring to Plaintiff being able to recall her medical conditions by name and explain what they are and how they impact her abilities, rather than being able to pronounce the words.    For example, the following interaction:

> Q Okay.  And do you have sleep problem?
> A Yes, I have trouble falling asleep at night.  I have narcolepsy stage 2.  So,
> I take –
> . . .
> Q Oh, is that – and what is narcolepsy? What does that mean?
> A. It's a sleeping disorder that causes excessive daytime sleepiness.

Tr. at pp. 771-72.

Under SSR 16-3p, the ALJ was obligated to "carefully consider all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including daily activities and the location, duration, frequency, and intensity of their pain or other symptoms." *Debra T. v. Comm'r of Soc. Sec.*, 2019 WL 1208788, at *9 (N.D.N.Y. Mar. 14, 2019) (quoting *Del Carmen Fernandez v. Berryhill*, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (internal quotations and alterations omitted)). "An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Dominique v. Comm'r of Soc. Sec.*, 2014 WL 1202622, at *7 (N.D.N.Y Mar. 24, 2014). To satisfy the substantial evidence rule, the ALJ's evaluation of symptoms must be based on a two-step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. § 404.1529(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. *Id*. § 404.1529(c)(3).

The ALJ noted that after concluding Plaintiff's impairments could reasonably be expected to cause the symptoms alleged, he would evaluate the intensity, persistence, and limiting effect of these symptoms. Tr. at p. 725. After considering Plaintiff's statements as to the intensity, frequency, and limiting nature of her impairments, the ALJ found them to be not entirely consistent. Tr. at p. 726.

The ALJ specifically acknowledges Plaintiff's reports that she spends time at home in her bed, she is anti-social, she has anxiety, she has difficulties managing money, she does not go out alone, she in unable to perform math, she has difficulties understanding and maintaining focus, she had memory deficits, headaches, pain and significant functional deficits from the June 2024 hearing. Tr. at p. 726. The ALJ also acknowledged after Plaintiff was psychiatrically hospitalized, during a follow up her mother reported Plaintiff was defiant, had difficulty recognizing consequences, and was promiscuous. Tr. at pp. 728-729. The ALJ explained and repeated multiple times in detail Plaintiff's daily activities, precipitating and aggravating factors of alleged symptoms, including pain; any and all medications prescribed and/or taken; treatment other than medication for relief of pain and other symptoms; prior work history; observations of treating and consulting physicians of record, and other factors bearing on Plaintiff's functional limitations or restrictions due to pain and other symptoms. Tr. at pp. 719-740.

The ALJ adequately considered Plaintiff's subjective statements and her mother's testimony in light of the medical and other evidence of record and articulated findings to support discounting the statements in light of the regulatory factors. *See also Wright v. Berryhill*, 687 F. App'x 45, 49 (2d Cir. 2017) (concluding the ALJ adequately supported

the decision to discount claimant's subjective statements of limitations where the ALJ discussed the claimant's range of activities, the conservative course of treatment in light of allegations of total disability, and the claimant's employment in physical labor in close temporal proximity to the dates of claimed disability)).

The Court finds that the ALJ correctly applied the proper legal standards in assessing Plaintiff's symptoms and adequately specified the reasons for discrediting Plaintiff's statements. Therefore, the ALJ's evaluation of symptoms is supported by substantial evidence.

## IV. CONCLUSION

**ACCORDINGLY,** it is

**ORDERED**, that Plaintiff's Motion for Judgement on the Pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgement on the Pleadings is **GRANTED**, and the Complaint is dismissed; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Date:  September 29, 2025
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge